IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| CASSANDRA B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI,[1] <br> **Acting Commissioner of Social Security,** <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 2:21-cv-00228-JCB <br><br><br> Magistrate Judge Jared C. Bennett |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[2] Before the court is Plaintiff Cassandra B.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary. Based upon the analysis set forth below, all of Plaintiff's arguments on appeal fail. Therefore, the court affirms the Commissioner's decision.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 3.

[2] ECF No. 10.

[3] 42 U.S.C. §§ 1381-1383f.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. In 2014, Plaintiff applied for SSI.[4] Plaintiff's applications were denied initially and upon reconsideration.[5] On February 8, 2017, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[6] The ALJ issued a written decision on February 22, 2017, denying Plaintiff's claim for SSI.[7] Plaintiff appealed the adverse ruling, and, on November 9, 2017, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.[8]

On February 11, 2018, Plaintiff appeared with counsel for a second hearing before the ALJ.[9] The ALJ issued a second written decision on June 12, 2018, again denying Plaintiff's claim for SSI.[10] Plaintiff appealed the adverse ruling, and, on December 18, 2019, the Appeals Council vacated the ALJ's second decision and remanded the case for further proceedings.[11]

Plaintiff appeared with counsel for a third hearing before a different ALJ on June 9, 2020.[12] That ALJ issued a third written decision on July 1, 2020, denying Plaintiff's claim for

---

[4] ECF No. 13, Administrative Record ("AR ___") 459-64.

[5] AR 163-64.

[6] AR 109-46.

[7] AR 182-203.

[8] AR 204-07.

[9] AR 76-108.

[10] AR 208-30.

[11] AR 231-37.

[12] AR 44-75.

SSI.[13] Plaintiff appealed the adverse ruling, and, on February 10, 2021, the Appeals Council denied her appeal,[14] making the third ALJ decision final for purposes of judicial review.[15] On April 15, 2021, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[16]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[17] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[18] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[19] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[20] "The [f]ailure to apply the correct

---

[13] AR 14-43.

[14] AR 1-6.

[15] 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481.

[16] ECF No. 2.

[17] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[18] 42 U.S.C. § 405(g).

[19] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[20] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[21]

The aforementioned standards of review apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[22] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[23]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[24]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[25] "If the

---

[21] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[22] 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[23] 20 C.F.R. § 416.920(a)(4); *see also Williams*, 844 F.2d at 750.

[24] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(ii).

[25] 20 C.F.R. § 416.925(a); *see also* 20 C.F.R. § 416.920(a)(4)(iii).

4

impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[26]

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that her impairments prevent performance of her "past relevant work."[27] "If the claimant is able to perform [her] previous work, [she] is not disabled."[28] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[29]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[30] Here, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[31] If the claimant "can make an adjustment to other work," she is not disabled.[32] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[33]

---

[26] *Williams*, 844 F.2d at 751.

[27] 20 C.F.R. § 416.920(a)(4)(iv).

[28] *Williams*, 844 F.2d at 751.

[29] *Id*.

[30] *Id*.

[31] *Id*. (quotations and citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(v).

[32] 20 C.F.R. § 416.920(a)(4)(v).

[33] *Id*.

## ANALYSIS

Plaintiff argues that the ALJ erred: (I) in assessing the opinions of Richard Ingebretsen, M.D. ("Dr. Ingebretsen"), which resulted in a flawed RFC; (II) in assessing the opinions of John Rose, M.D. ("Dr. Rose"); and (III) by concluding that Plaintiff could perform the jobs identified at step five.[34] The court addresses each of Plaintiff's arguments in turn below. Based upon the following analysis, all of Plaintiff's arguments fail. Therefore, the court affirms the Commissioner's decision.

**I.     The ALJ Did Not Err in Assessing Dr. Ingebretsen's Opinions and Plaintiff's RFC.**

In considering Dr. Ingebretsen's opinions, the ALJ gave them "great weight."[35] With respect to Plaintiff's ability to stand and walk, Dr. Ingebretsen opined that Plaintiff could stand for one hour at a time for a total of two hours in an eight-hour workday and walk for thirty minutes at a time for a total of two hours in an eight-hour workday.[36] When assessing Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work with some limitations, including a limitation to the ability to stand and/or walk with normal breaks for four hours in an eight-hour workday.[37]

---

[34] In her complaint, Plaintiff also raises a constitutional claim under *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). However, because Plaintiff failed to address that claim in her briefs, the court concludes that she has abandoned it. Therefore, the court does not address the claim here.

[35] AR 30.

[36] AR 2686.

[37] AR 22-23.

Plaintiff argues that despite giving Dr. Ingebretsen's opinions great weight, the ALJ failed to include in Plaintiff's RFC the limitations concerning Plaintiff's ability to stand and walk that Dr. Ingebretsen recommended. Plaintiff contends that the ALJ erred by failing to follow the conclusion of a doctor whose opinion was entitled to great weight and, therefore, the RFC assessment is not supported by substantial evidence. As shown below, Plaintiff's arguments fail.

First, because the ALJ gave great weight, rather than controlling weight, to Dr. Ingebretsen's opinions, the ALJ was not required to adopt all of Dr. Ingebretsen's assessed limitations.[38] Indeed, the ALJ, not Dr. Ingebretsen, was tasked with assessing Plaintiff's RFC based on the entire record.[39] Second, substantial evidence supports the portion of the ALJ's RFC

---

[38] *McLaughlin v. Berryhill*, No. CIV-17-794-W, 2018 WL 2771567, at *5 (W.D. Okla. May 18, 2018) ("According a medical opinion great weight does not mean the ALJ must adopt every single aspect of the opinion." (citing numerous cases)), *report and recommendation adopted sub nom. McLaughlin v. Comm'r of Soc. Sec.*, No. CIV-17-794-W, 2018 WL 2770205 (W.D. Okla. June 8, 2018); *Medina v. Berryhill*, No. 16-CV-02424-PAB, 2018 WL 1517021, at *3 (D. Colo. Mar. 28, 2018) ("The ALJ did not give Dr. Dunn's opinion controlling weight and, despite giving Dr. Dunn's opinion great weight, the ALJ is not required to adopt its limitations verbatim into the RFC." (citing *Carver v. Colvin*, 600 F. App'x 616, 620 (10th Cir. 2015)); *Bruso v. Colvin*, No. 1:14-CV-00156 EJF, 2016 WL 1261060, at *7 (D. Utah Mar. 30, 2016) ("According great weight to an opinion, unlike controlling weight, does not require the ALJ to adopt the opinion completely."); *Eastman v. Colvin*, No. CIVA. 13-2527-JWL, 2014 WL 6675058, at *10 (D. Kan. Nov. 25, 2014) ("Although the ALJ accorded 'considerable weight' to Dr. Mintz's opinion and 'great weight' to Dr. Fortune's opinion, he did not accord controlling weight, and he was not required to include the limitations opined by those doctors in his RFC.").

[39] 20 C.F.R. § 416.946(c) (providing that the ALJ is responsible for assessing RFC); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) ("The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence."); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

7

assessment related to Plaintiff's ability to stand and walk. Importantly, the ALJ gave "some weight" to the opinions of the state agency physicians,[40] who opined that Plaintiff could stand and/or walk for six hours in an eight-hour workday.[41] Faced with the conflicting opinions of the state agency physicians and Dr. Ingebretsen, the ALJ adopted a middle ground between the opinions, which was not an error.[42] For those reasons, the ALJ did not err by failing to include in Plaintiff's RFC Dr. Ingebretsen's opined limitations concerning Plaintiff's ability to stand and walk, and the ALJ's RFC assessment is supported by substantial evidence.[43]

## II. The ALJ Did Not Err in Assessing Dr. Rose's Opinions.

The ALJ did not err in assessing Dr. Rose's opinions. "An ALJ must give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions."[44] In evaluating the weight given to medical opinions, an ALJ must consider the following factors set

---

[40] AR 31.

[41] AR 158, 176.

[42] *Guillar v. Comm'r, SSA*, 845 F. App'x 715, 719 (10th Cir. 2021) ("Confronted with conflicting medical opinions from Dr. Gilder and Dr. Ginsburg, the ALJ adopted a middle ground that did not fully embrace either one by finding that, while Guillar was no longer capable of performing his previous work as a salesman and small business owner, he could still perform some low-skill, sedentary work. We have affirmed such an approach as consistent with the ALJ's prerogative to weigh the medical evidence before her."); *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (concluding that the ALJ did not err by "arriv[ing] at an assessment between . . . two medical opinions without fully embracing either one").

[43] Plaintiff also argues that her assessed RFC precludes her from performing light work as it is defined in Social Security Ruling ("SSR") 83-10. SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). In support of that argument, Plaintiff relies exclusively upon Dr. Ingebretsen's opined standing and walking limitations. Because the court has already concluded that the ALJ did not err by failing to include those limitations in Plaintiff's RFC, Plaintiff's argument necessarily fails.

[44] *Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015) (alteration in original) (quotations and citation omitted).

8

forth in 20 C.F.R. § 416.927(c): (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the types of examinations and testing; (3) the extent to which the opinion is supported by relevant evidence; (4) consistency of the opinion with the record as a whole; (5) whether the opinion was rendered by a specialist in a particular area; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.[45] Importantly, an ALJ is not required to discuss every factor set forth in 20 C.F.R. § 416.927(c).[46]

With respect to the opinions of treating sources, an ALJ must adhere to additional requirements when considering those opinions.[47] Among those requirements is that the ALJ first must follow a process to determine if a treating source medical opinion is entitled to controlling weight.[48] If the opinion is not entitled to controlling weight, the opinion is still entitled to deference and must be weighed using the factors in 20 C.F.R. § 416.927(c).[49]

---

[45] *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927(c)(1)-(6). Because Plaintiff's application for SSI was filed before March 27, 2017, 20 C.F.R. § 416.927 applies here. 20 C.F.R. § 416.927 (governing evaluation of opinion evidence for claims filed before March 27, 2017).

[46] *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review").

[47] *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2).

[48] *Langley,* 373 F.3d at 1119; *see also* 20 C.F.R. § 416.927(c)(2).

[49] *Langley,* 373 F.3d at 1119; *see also* 20 C.F.R. § 416.927(c)(2).

In considering Dr. Rose's opinions, the ALJ gave them "little weight."[50] Thus, it is implicit that the ALJ did not view those opinions as being entitled to controlling weight, and Plaintiff does not challenge that portion of the ALJ's analysis. Instead, Plaintiff argues that the ALJ erred in considering the factors in 20 C.F.R. § 416.927(c). Accordingly, the court turns to the ALJ's consideration of those factors.

In reaching the conclusion that Dr. Rose's opinions were entitled to little weight, the ALJ properly relied upon several of the relevant factors.[51] First, the ALJ relied upon the fact that Dr. Rose's opinions were not supported with explanation or rationale but were expressed on a checkbox form.[52] Second, the ALJ determined that Dr. Rose's opinions were not supported by the objective results in treatment notes.[53] Third, the ALJ found that Dr. Rose's opinions were not supported by the course or treatment Dr. Rose prescribed for Plaintiff.[54] Fourth, the ALJ concluded that Dr. Rose's opinions were inconsistent with later treatment notes of Plaintiff's new neurologist.[55] Fifth, the ALJ determined that Dr. Rose's opinions were inconsistent with the

---

[50] AR 29-30.

[51] *Id*.

[52] 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

[53] *Id*.

[54] *Id.* § 416.927(c)(2)(ii) (providing that the nature and extent of the treatment relationship is a relevant consideration in assessing opinion evidence and that the ALJ should "look at the treatment the source has provided").

[55] *Id.* § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

objective results of Dr. Ingebretsen's consultative examinations.[56] Finally, the ALJ found that Dr. Rose's opinions were inconsistent with Dr. Ingebretsen's opinions and the state agency physicians' opinions.[57]

Plaintiff contends that the foregoing analysis is flawed. However, Plaintiff challenges several of the ALJ's supporting reasons but does not challenge all of them. Specifically, Plaintiff fails to challenge the ALJ's determinations that Dr. Rose's opinions were not supported with explanation or rationale but were expressed on a checkbox form, were not supported by the objective results in treatment notes, and were inconsistent with the state agency physicians' opinions. Those unchallenged reasons are sufficient, by themselves, to support the ALJ's analysis of Dr. Rose's opinions. Indeed, as noted above, the ALJ is not required to discuss every factor set forth in 20 C.F.R. § 416.927(c).[58] For that reason alone, Plaintiff's overall argument concerning the ALJ's analysis of Dr. Rose's opinions must fail.

Moreover, even if the court were to consider Plaintiff's specific challenges to the ALJ's supporting reasons, those challenges would still fail because they are nothing more than an invitation to reweigh the evidence, which the court must refuse. In advancing her arguments, Plaintiff points to select portions of the record that she believes undermine the ALJ's reasoning. Such a tactic is futile on appeal. As stated above, "[i]n reviewing the ALJ's decision, [this court

---

[56] *Id*.

[57] *Id*.

[58] *Oldham*, 509 F.3d at 1258 (stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review").

11

may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[59] From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions.[60] By rearguing the weight of the evidence before the ALJ, Plaintiff fails to show that the ALJ's analysis of Dr. Rose's opinions is not supported by substantial evidence. Therefore, even if the court were to consider Plaintiff's specific challenges to the ALJ's assessment of Dr. Rose's opinions, those challenges would fail.

### III. The ALJ Did Not Err at Step Five.

Plaintiff argues that the ALJ erred by concluding that Plaintiff could perform the jobs identified at step five. Specifically, Plaintiff contends that the ALJ erred by failing to: (A) resolve an apparent conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); (B) recontact certain medical sources to obtain clarification on Plaintiff's ability to perform certain tasks; and (C) address the fluctuation in Plaintiff's mental health symptoms. The court addresses each of Plaintiff's arguments below. Based upon the following analysis, those arguments fail.

---

[59] *Madrid*, 447 F.3d at 790 (quotations and citation omitted).

[60] *Oldham*, 509 F.3d at 1257 (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

### A. The ALJ Appropriately Resolved Any Possible Conflicts Between the VE's Testimony and the DOT.

Plaintiff asserts that the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the DOT. Tenth Circuit precedent and SSR 00-4p address the precise issue raised by Plaintiff's argument. Before an ALJ relies upon a VE's testimony to support a disability determination, the ALJ must: (1) fulfill the "affirmative responsibility" to ask the VE about any possible conflicts between the VE's testimony and the DOT; (2) identify and obtain a reasonable explanation for any such conflicts; and (3) explain in the decision how any such conflicts were resolved.[61]

At Plaintiff's administrative hearing, the ALJ posed a hypothetical to the VE about an individual with Plaintiff's age, education, work experience, and RFC.[62] The ALJ then asked the VE if such an individual could perform other work in significant numbers in the national economy.[63] The VE testified that such an individual could perform the jobs of routing clerk, office helper, and inspector and hand packager.[64] The ALJ asked the VE if her testimony was consistent with the DOT.[65] Although the VE testified that there was "nothing inconsistent"

---

[61] SSR 00-4p, 2000 WL 1898704, at *2-4 (Dec. 4, 2000); *see also see also Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("We do not mean by our holding that the [DOT] 'trumps' a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

[62] AR 69-70

[63] AR 70.

[64] AR 71.

[65] AR 72.

between her testimony and the DOT, she went on to identify some limitations in the hypothetical that were not addressed by the DOT.[66] However, the VE further indicated that her testimony about the identified jobs was based upon her professional experience.[67] In his decision, the ALJ relied upon the VE's testimony to conclude at step five that Plaintiff could perform other work existing in significant numbers in the national economy.[68] The ALJ also determined that the VE's testimony was consistent with the DOT and that, to the extent the DOT did not cover certain limitations in the hypothetical given to the VE, the VE's testimony about the identified jobs was based upon the VE's professional experience.[69]

Given those facts, the ALJ fulfilled his responsibilities under Tenth Circuit precedent and SSR 00-4p. Indeed, the ALJ asked the VE about any possible conflicts between the VE's testimony and the DOT. The ALJ then obtained a reasonable explanation for any such conflicts, including the fact that some of the VE's testimony was based upon her professional experience.[70] Finally, the ALJ explained the resolution of any such conflicts in his decision. Accordingly, the ALJ appropriately resolved any possible conflicts between the VE's testimony and the DOT.

---

[66] *Id.*

[67] *Id.*

[68] AR 32-33.

[69] AR 33.

[70] *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) ("Because the VE testified that, on the basis of his professional experience, 11,000 sedentary hand packager jobs existed in the national economy, the apparent conflict between the DOT and the VE's testimony regarding the job's exertional requirement was reasonably explained, and the ALJ could rely on that testimony as substantial evidence to support her determination of nondisability.").

Notwithstanding the ALJ's fulfillment of those responsibilities, Plaintiff argues that an unresolved conflict exists. Specifically, Plaintiff contends that there is a conflict between: (1) the VE's testimony that Plaintiff could perform the identified jobs, all of which require a general educational development ("GED") reasoning level 2,[71] which in turn requires the ability "to carry out detailed but uninvolved written or oral instructions";[72] and (2) the ALJ's conclusion in Plaintiff's RFC that Plaintiff was limited to carrying out "simple, routine, and repetitive tasks."[73] Plaintiff asserts that the ALJ's limitation is more consistent with a GED reasoning level 1, which requires the ability "to carry out simple one- or two-step instructions."[74] Plaintiff's argument misses the mark because the ALJ's RFC assessment limited Plaintiff to simple *tasks*, not simple *instructions*. A limitation to simple tasks, rather than simple instructions, is consistent with a GED reasoning level 2.[75] Therefore, contrary to Plaintiff's argument, there was no conflict between the VE's testimony and the DOT.

---

[71] DOT §§ 222.687-022, 1991 WL 672133 (Jan. 1, 2016) (routing clerk); 239.567-010, 1991 WL 672232 (Jan. 1, 2016) (office helper); 559.687-074, 1991 WL 683797 (Jan. 1, 2016) (inspector and hand packager).

[72] DOT, Appendix C, 1991 WL 688702 (Jan. 1, 2016).

[73] AR 23.

[74] DOT Appendix C, 1991 WL 688702 (Jan. 1, 2016).

[75] *Compare* Stokes v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008) (rejecting the plaintiff's argument that "the ALJ's limitation to simple, repetitive, and routine work should be construed as a limitation to jobs with a reasoning-level rating of one" (citing Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)), *Hackett*, 395 F.3d at 1176 (providing that a limitation to "'simple and routine work *tasks*'" "appears more consistent" with a GED reasoning level 2 (citation omitted) (emphasis added)), Marilyn M. v. Berryhill, No. 1:17-CV-00063-PMW, 2018 WL 4376306, at *3 (D. Utah Sept. 13, 2018) ("[T]he Tenth Circuit has held that a reasoning level of two is consistent with an RFC limitation to simple and routine work *tasks*." (citing *Stokes* and

## B. The ALJ Did Not Err by Failing to Recontact Certain Medical Sources Concerning Plaintiff's Ability to Perform Certain Tasks.

Plaintiff contends that the ALJ should have recontacted certain medical sources concerning Plaintiff's ability to perform certain tasks. Although not cited by Plaintiff, her argument is governed by 20 C.F.R. 416.920b(b), which addresses how an ALJ considers incomplete or inconsistent evidence. In relevant part, that regulation provides:

> In some situations, we may not be able to make our determination or decision because the evidence in your case record is insufficient or inconsistent. We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision. We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. If the evidence in your case record is insufficient or inconsistent, we may need to take the additional actions in paragraphs (b)(1) through (4) of this section.[76]
>
> > (1) If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have.
> >
> > (2) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a

---

*Hackett*) (emphasis added)), *and Reynolds v. Berryhill*, No. 2:16-CV-01210-BCW, 2018 WL 1276809, at *6 (D. Utah Mar. 9, 2018) ("The Tenth Circuit has repeatedly held that reasoning level two is consistent with an RFC limitation to simple *tasks*." (citing *Stokes* and *Hackett*) (emphasis added)), *with Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (citing with approval an Eighth Circuit case, which "held that a limitation to simple *instructions* is inconsistent with both level-two and level-three reasoning" (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)) (emphasis added)).

[76] Although the regulation specifies paragraphs (b)(1) through (b)(4), paragraph (b)(4) does not appear in the regulation.

16

> conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
>
>> (i) We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return . . . .[77]

Under that regulation's plain language,[78] Plaintiff's argument fails for two reasons. First, the ALJ was not required to recontact Plaintiff's medical sources even if the ALJ were faced with inconsistent evidence. Indeed, even when faced with inconsistent evidence, paragraph (b)(1) permitted the ALJ to rely upon the other relevant evidence to determine whether Plaintiff was disabled.[79] That is precisely what the ALJ did here.

---

[77] 20 C.F.R. § 416.920b(b)(1)-(2)(i).

[78] In considering the language of regulations, the court applies "the same rules used to interpret statutes." *Bd. of Educ. of Gallup-McKinley Cnty. Schs. v. Native Am. Disability L. Ctr., Inc.*, 959 F.3d 1011, 1013 (10th Cir. 2020). Consequently, the court begins its "analysis by examining the plain language of the text of the regulation, giving the words their ordinary meaning." *Id.*

[79] 20 C.F.R. § 416.920b(b)(1); *see also Boyle v. Berryhill*, No. 16-CV-0695-CVE-FHM, 2017 WL 4364203, at *4 (N.D. Okla. Oct. 2, 2017) (analyzing identical regulation at 20 C.F.R. § 404.1520b and stating that an ALJ is not required to take any of the actions in paragraph (b)(2) "if the ALJ determines that the ALJ can make a finding as to the claimant's disability based on the evidence in the administrative record" under paragraph (b)(1)); *Gotcher v. Berryhill*, No. 15-CV-609-TLW, 2017 WL 1234147, at *7 (N.D. Okla. Mar. 31, 2017) (stating that "an ALJ need

Second, paragraph (b)(2) would have applied only if: (1) the evidence was consistent but insufficient; or (2) if after considering all the evidence, the ALJ still could not determine whether Plaintiff was disabled.[80] The ALJ did not find that either provision applied to the evidence in this case because there was other record evidence that made the disability determination possible. In any event, even if paragraph (b)(2) had been applicable, the ALJ was not required to recontact Plaintiff's medical sources. Indeed, paragraph (b)'s plain language provides that an ALJ "*may* not be able to make [the disability] determination or decision because the evidence in [the claimant's] case record is insufficient or inconsistent" and that an ALJ "*may* need to take the additional actions" described in subsequent paragraphs.[81] Additionally, paragraph (b)(2)(i) provides similarly permissive language indicating that an ALJ "*may* recontact [the claimant's] medical source."[82] The plain language interpretation of "may" is discretionary, not mandatory.[83] The context of paragraph (b)(2) clearly shows this because other sentences in that paragraph provide that the actions the ALJ may take "will depend on" other factors and that the ALJ "will try" to use certain measures to resolve the case.[84] Such language only strengthens the

---

not even make an effort to resolve an inconsistency" under paragraph (b)(2) "if an ALJ can determine whether a plaintiff is disabled based on the existing evidence in a case" under paragraph (b)(1)).

[80] 20 C.F.R. § 416.920b(b)(2).

[81] *Id*. § 416.920b(b) (emphasis added).

[82] *Id*. § 416.920b(b)(2)(i) (emphasis added).

[83] *See, e.g.*, *United States v. Bowden*, 182 F.2d 251, 252 (10th Cir. 1950) ("The use of the word 'may' in a statute will be construed as permissive and to vest discretionary power, unless the context of the statute clearly indicates a purpose to use it in a mandatory sense.").

[84] 20 C.F.R. § 416.920b(b)(2).

18

interpretation that "may" in paragraphs (b) and (b)(2)(i) is discretionary. The ALJ had discretion, and he appropriately used it to decide the case based on the evidence before him instead of recontacting Plaintiff's medical sources. For those reasons, the ALJ was not required to recontact Plaintiff's medical sources concerning Plaintiff's ability to perform certain tasks.

      C.      **The ALJ Adequately Addressed the Fluctuation in Plaintiff's Mental Health Symptoms.**

Plaintiff argues that the ALJ erred by failing to address the fluctuation in Plaintiff's mental health symptoms. In advancing that argument, Plaintiff points to the ALJ's discussion of the record evidence concerning Plaintiff's mental health symptoms, which shows that Plaintiff's those symptoms did fluctuate.[85] However, that does not compel the conclusion that the ALJ did not address any such fluctuations. To the contrary, the ALJ appropriately addressed them in Plaintiff's RFC when he limited Plaintiff to a restricted range of light work that involved only simple, routine, repetitive tasks and occasional interaction with coworkers, supervisors, and the general public.[86] Furthermore, because "the record contains support for both the notion that [Plaintiff] has extreme deficiencies in concentration, persistence, and pace, and the notion that [her] mental limitations are not that severe," "[t]he ALJ was entitled to resolve such evidentiary conflicts and did so."[87] Accordingly, Plaintiff's argument fails.

---

[85] AR 24-25.

[86] AR 23.

[87] *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

## CONCLUSION AND ORDER

As demonstrated above, all of Plaintiff's arguments on appeal fail. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

DATED this 22nd day of April 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge